IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MILAGROS MALDONADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION V-09-41 |
| MICHAEL J. ASTRUE, | § | |
| Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff Milagros Maldonado ("Plaintiff") and Defendant Michael J. Astrue's ("the Commissioner") cross motions for summary judgment. (Dkt. Nos. 7 & 11.) Having considered the motions, record, and applicable law, the Court finds that Plaintiff's motion should be GRANTED, Defendant's motion should be DENIED, the ALJ's decision denying benefits should be REVERSED, and the case should be REMANDED for further proceedings.

**I. Background**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Plaintiff's application for supplemental security income. Plaintiff was 32 years old at the time she applied for benefits. (Tr. 110.)[1] She initially indicated that she graduated from high school in 1990 (Tr. 127), but testified at her hearing that she did not finish school. (Tr. 246—47.) She completed cosmetology training in Puerto Rico in approximately 1996. (Tr. 127 & 246—48.)

Plaintiff filed her application for benefits on February 16, 2005, alleging that she was disabled since June 1, 2002, due to depression, anxiety, and panic attacks. (Tr. 110—15 & 121.) Her claims were denied by the Commissioner and again on reconsideration. (Tr. 96—98 & 101—03.) Plaintiff had a hearing before an Administrative Law Judge (ALJ) on February 27, 2008. (Tr. 29, 33 & 241—

---

1. Citations to "Tr." refer to the administrative transcript (Dkt. No. 5).

1

61.) She appeared at the hearing *pro se* and testified through the hearing assistant, who acted as a Spanish interpreter. (Tr. 243—48 & 252—57.)

Two medical experts also testified at Plaintiff's hearing, neither of whom examined or otherwise treated Plaintiff. After reviewing Plaintiff's medical file, Dr. Dorothy Leong testified that Plaintiff's condition was not severe and she did not meet any of the exertional listings. (Tr. 252.) Dr. Sharon Rogers, a clinical psychologist, also reviewed Plaintiff's medical records and concluded that although Plaintiff had been diagnosed with major depressive disorder, generalized anxiety disorder, and personality disorder, Plaintiff's mental impairments did not meet or equal any non-exertional listings. (Tr. 246.)

The ALJ issued an opinion on March 17, 2008 finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 15—27.) The Appeals Council denied Plaintiff's request for review on April 17, 2009, and the ALJ's determination became the final decision of the Commissioner. (Tr. 3—8.)[2] Plaintiff filed this action on June 19, 2009 seeking review of the Commissioner's final decision. (Dkt. No. 1.)

**II. Standard**

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as

---

2. During the appeals process, Plaintiff was represented by counsel, who submitted additional medical evidence in support of review. (Tr. 13—14 & 235—40.)

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, the Court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the Court's judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343—44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are.

(2) A claimant will not be found to be disabled unless he has a "severe impairment."

(3) A claimant whose impairment meets or is equivalent to an impairment listed in an Appendix to the regulation will be considered disabled without the need to consider vocational factors.

(4) A claimant who is capable of performing work he has done in the past must be found "not disabled."

(5) If the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be

considered to determine whether he can do other work. *See* 20 C.F.R. § 404.1520(b)—(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Social Security Act. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing the burden on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## III. Analysis

Following Plaintiff's February 27, 2008 hearing, the ALJ evaluated Plaintiff's disability claim according to the aforementioned five-step process and issued the following Findings of Fact and Conclusions of Law:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2005.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2002, the alleged onset date (20 CFR 416.920(b) and 416.971 *et. seq.*).

4

>3. The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, and personality disorder (20 CFR 404.1520(c)).
>
>. . .
>
>4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>. . .
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has no exertional or other physical limitations. However, she has mild restriction of her activities of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, or pace.
>
>. . .
>
>6. The claimant is capable of performing past relevant work as an administrative assistant, machine operator, and secretary, as this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>. . .
>
>7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2002 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 23—27.)

Plaintiff now asks the Court to reverse the ALJ's decision on the grounds that the ALJ breached his heightened duty to Plaintiff as an unrepresented claimant to fully develop the record. Specifically, the ALJ failed to elicit expert medical opinion evidence about Plaintiff's capabilities to perform mental work-related activities, and therefore failed to adequately assess Plaintiff's mental residual functional capacity at Step 4 of the sequential evaluation of disability described in Part II, *supra*. The Commissioner denies that the ALJ breached his duty to develop the record, claiming instead that the ALJ properly considered the evidence of record relating to Plaintiff's mental impairments as well as the expert's opinion, and that he accounted for his findings by limiting Plaintiff's RFC accordingly. The Commissioner further claims that even if the ALJ did commit legal error, Plaintiff is unable to show that she was prejudiced.

### A. The ALJ's Evaluation of Plaintiff's Mental RFC

The procedure for evaluating a mental impairment is set forth in 20 C.F.R. § 404.1520. In Step 2 of the sequential five-step process described in Part II *supra*, the ALJ is required to perform separate evaluations on a four-point scale regarding how the claimant's mental impairment impacts four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a-(c)(3—4). These four functional areas are often referred to as the "Paragraph B" criteria because they are also found in the second paragraph of mental impairment Listings 12.02, 12.03, 12.04, 12.06, 12.07, and 12.08. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The ratings of the degree of limitation in the Paragraph B criteria are used in Step 2 to determine whether the claimant's mental impairment is "severe." 20 C.F.R. § 404.1520a-(d). If the claimant's mental impairment(s) is "severe," the ALJ determines at Step 3 whether the impairment meets or is equivalent in severity to a listed mental disorder. *Id.*

Where a claimant's impairment is rated as "severe," but does not satisfy a listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00B ("Listing 12.04"), the ALJ must assess the claimant's mental residual functional capacity (RFC). *See* 20 C.F.R. § 404.1520(e); *Brown v. Barnhart*, 285 F. Supp. 2d 919, 931—32 (S.D. Tex. 2003). The RFC assessment is a function-by-function assessment of the claimant's ability to do work-related activities, and it must be expressed in terms of work-related functions. SSR 96-8p ("Assessing Residual Functional Capacity in Initial Claims"). In evaluating a claimant's RFC, the Fifth Circuit has looked to Social Security Administration (SSA) rulings, *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), which make clear:

> [T]he limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p ("Assessing Residual Functional Capacity in Initial Claims").

Specifically, the ALJ must consider the following broad factors in assessing a claimant's mental RFC: (1) the ability to understand, remember and carry out simple instructions; (2) the ability to make simple work-related decisions; (3) the ability to respond appropriately to supervision, coworkers and customary work pressures in a work setting; and (4) the ability to deal with routine changes in work settings. 20 C.F.R. § 404.1545(c); SSR 96-8p; SSR 85-16 ("Residual Functional Capacity for Mental Impairments"); Social Security Program Operations Manual System (POMS) DI 25020.010A.3.a.[3] An individual who has suffered a "substantial loss" in the ability to meet any of these work-related demands is considered disabled. SSR 85-15 ("Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Non-Exertional Impairments"); POMS DI 25020.010A.3.b.

SSA rulings further provide that when evaluating a claimant's mental ability to perform unskilled work, the ALJ should consider the claimant's ability to: (a) remember work-like procedures; (b) understand and remember very short and simple instructions; (c) carry out very short and simple instructions; (d) maintain attention for extended periods of 2-hour segments; (e) maintain regular attendance and be punctual within customary tolerances; (f) sustain an ordinary routine without special supervision; (g) work in coordination with or proximity to others without being (unduly) distracted by them; (h) make simple work-related decisions; (i) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (j) ask simple questions or request assistance; (k) accept instructions and respond appropriately to criticism from supervisors; (l) get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes; (m) respond appropriately to changes in a (routine) work setting; and (n) be aware of normal hazards and take appropriate precautions. POMS DI 25020.010B.3; *see also* SSR 85-16.

---

[3]. This section of the POMS concerns disability insurance benefits rather than SSI claims; however, the standard for both is essentially the same. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In this case, once the ALJ found at Step 2 that Plaintiff suffered from "severe" mental impairments, but found at Step 3 that her impairments did not meet the criteria of any listed impairments, he was required to evaluate Plaintiff's mental RFC. The Commissioner contends the ALJ properly performed a function-by-function assessment of Plaintiff's abilities and then adjusted Plaintiff's RFC to allow for her mild restrictions of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, or pace. However, these are the "Paragraph B" limitations the ALJ should have considered at Step 2. The ALJ therefore improperly relied solely on the "Paragraph B" ratings and failed evaluate Plaintiff's ability to understand, remember, and carry out instructions; respond appropriately to supervision, co-workers, and work pressures; or deal with changes in a routine work setting that C.F.R. § 404.1545 requires at Step 4. The ALJ also failed to consider Plaintiff's ability to perform the specific tasks set forth in POMS DI 25020.010B.3 and SSR 85-16, *supra*.

Thus, the Court concludes the ALJ applied the improper legal standard in evaluating the evidence and determining Plaintiff's mental RFC.

### B. The ALJ's Duty to Develop the Record

The Fifth Circuit imposes a duty on the ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ's duty to develop the record is even greater when, as in this case, the claimant is unrepresented by counsel. *See Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981). Regardless of whether a claimant's waiver of counsel was valid, the ALJ has a heightened duty in cases where a claimant is acting *pro se* "to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Id.* This duty requires the ALJ to rigorously examine the claimant regarding his impairments, daily routine, pain, and other limitations. *See generally Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991); *James v. Bowen*, 793 F.2d 702, 704—05 (5th Cir. 1986). "If the ALJ does not satisfy his duty, his decision is not substantially justified," *Ripley*, 67

F.3d at 557, and the Court must not hesitate to remand. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

Plaintiff contends the ALJ failed to develop the record and elicit facts necessary to evaluate her capability to perform mental work-related activities, as evidenced by the ALJ's failure to properly assess her mental RFC. The Commissioner claims there was nothing more the ALJ could have done to develop the record, short of fabricating evidence. In support of this contention, the Commissioner notes that the ALJ called two medical experts to testify at the hearing—Drs. Leong and Rogers—and sent Plaintiff for a consultative psychological evaluation on June 9, 2005 with Dr. Beatriz Trujillo-Miranda.

In his Findings of Fact and Conclusions of Law, the ALJ acknowledged that Dr. Trujillo-Miranda had diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and panic disorder. (Tr. 25.) While the ALJ found these impairments to be severe, he ultimately concluded that Plaintiff still "carried the basic mental abilities required for sustained work activities," noting that Dr. Trujillo had found Plaintiff's thought content to be "logical, coherent, and relevant." (Tr. at 25—26.) However, the ALJ failed to acknowledge that Dr. Trujillo also found Plaintiff's psychomotor activity, attention, concentration, and memory were diminished; that she was "anxious and sad with cry[ing] episodes;" and that she showed suicidal and homicidal ideations. (Tr. 173—74.) The ALJ also rejected Dr. Trujillo's conclusion that Plaintiff's clinical prognosis and capacity to do work were "poor . . . in view of the severity of her emotional conditions" (Tr. 178.)

The ALJ did not explain why he rejected Dr. Trujillo's conclusions, nor did he elicit any opinion testimony from Drs. Leong and Rogers regarding Plaintiff's ability to understand, remember, and carry out instructions; respond appropriately to supervision, co-workers, and work pressures; or deal with changes in a routine work setting in order to justify disregarding Dr. Trujillo-Miranda's opinion regarding the same. Moreover, while the Commissioner contends that a Mental RFC Evaluation form was not necessary because there was a medical expert at the hearing "specifically

9

devoted to providing testimony about Plaintiff's mental RFC," (Dkt. No. 13 at 4), the Court notes that Dr. Rogers merely testified that Plaintiff would have "mild ADL limits," "[m]oderate social limitations," and "[m]oderate concentration, persistence[,] and pace." (Tr. 251.) Like the ALJ's analysis, Dr. Roger's testimony was limited to the "Paragraph B" criteria and did not constitute a proper mental RFC evaluation as described in Part III.A *supra*.

Although the record in this case includes a significant amount of medical evidence establishing that Plaintiff has suffered severe mental impairments dating back to at least 1998, the ALJ failed to develop the record with respect to the effect of these impairments on Plaintiff's ability to perform work-related tasks. The Court concludes that the ALJ did not discharge his special duty to develop the facts of this case, and therefore his decision was not substantially justified.

### C. Prejudice to Plaintiff

It is well settled that, if an agency "violate[s] its rules and prejudice result[s], the proceedings are tainted and any actions resulting from the proceeding cannot stand." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). In a social security benefits case, an individual establishes prejudice from the ALJ's failure to request additional information by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different result. *Ripley*, 67 F.3d at 557 n.22 (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)).

The Court finds that, had the ALJ asked the two testifying medical experts specific questions utilizing the proper mental RFC standard, additional evidence would have been produced that might have led the ALJ to conclude that Plaintiff was disabled within the meaning of the Social Security Act. Thus, Plaintiff has demonstrated prejudice, and the ALJ's decision cannot stand.

### IV. Conclusion

Because the ALJ failed to develop the record and properly consider the effect of Plaintiff's severe mental impairment on the work-related activities set forth in 20 C.F.R. § 404.1545(c), POMS

DI 25020.010B.3, and SSR 85-16, the case must be remanded for reexamination of this issue. The Court holds no opinion on whether Plaintiff will prevail on the merits of her mental impairment claims, but finds only that the regulations require the ALJ to develop the record, evaluate Plaintiff's claims, and document his findings accordingly.

Plaintiff's Motion for Summary Judgment (Dkt. No. 11) is therefore **GRANTED**; the Commissioner's Motion for Summary Judgment (Dkt. No. 7) is **DENIED**; the Commissioner's decision is **REVERSED**; and the case is **REMANDED** pursuant to 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

It is so ORDERED.

Signed this 13th day of August, 2010
.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE